398 A.2d 951

**In re Inter Vivos Trust of Jeanne P. MENDENHALL, Settlor.**

Supreme Court of Pennsylvania.

Argued Nov. 14, 1978.
Decided March 14, 1979.

78

Mercer D. Tate, Philadelphia, for appellant.

W. Edward Greenwood, Gawthrop & Greenwood, West Chester, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

This is an appeal from the final decree of the Court of Common Pleas, Chester County, Orphans' Court Division, dismissing exceptions of the settlor-beneficiary to the adjudication entered following audit of the amended account of Southeast National Bank of Pennsylvania, trustee, under a Deed of Trust executed by Jeanne P. Mendenhall, dated October 9, 1969.

The amended account covering the period from October 9, 1969 to October 31, 1975, was audited before the Orphans' Court on July 7, 1976. At that time, settlor objected to the account and requested surcharge of the trustee for the following reasons: (1) failure to invest large amounts of cash; (2) failure to sell on two separate occasions a holding of Philadelphia Electric preferred stock; (3) investment and retention of trust assets in Franklin New York Corporation; and, (4) improper concentration of trust assets in bank securities.

Pursuant to the parties' stipulation that the trust lost $550 income as a result of uninvested cash, the auditing judge awarded a surcharge in that amount. The remaining objections were denied, and, on July 29, 1976, the amended account was confirmed nisi, subject to a surcharge of $550. Exceptions filed to that adjudication were dismissed and the adjudication of July 29, 1976, was adopted as the court's final decree.

■ Initially, we must decide whether the Orphans' Court applied the correct standard in evaluating the trustee's performance and in concluding there was no breach of duty in its management of the Mendenhall trust assets. Generally, a trustee who is authorized to retain investments need only exercise the skill and judgment which a prudent person, under similar circumstances, would exercise in connection with the management of his or her own estate. *Mereto Estate,* 373 Pa. 466, 96 A.2d 115 (1953). However, if the trustee possesses or procures its appointment by representing it has greater skill than that of a person of ordinary prudence, then it is required to exercise such greater skill. *Killey Trust,* 457 Pa. 474, 326 A.2d 372 (1974). *Estate of Cahen,* 483 Pa. 157, 168–169, 394 A.2d 958, 964 (1978). See also Restatement (Second) of Trusts § 174 (1959).

At audit, settlor maintained that Southeast National Bank (Southeast) was a corporate fiduciary possessing greater skill in the management of trust assets than a person of ordinary prudence and, furthermore, that Southeast, in procuring its appointment as trustee in this matter, represented itself as having such greater skill. Accordingly, settlor argued Southeast should be judged by the standard of a person with such special skill. The auditing judge rejected settlor's contention stating:

"In this case there is no showing that this trustee either had extraordinary skill in the administration of Trusts or that it procured its appointment as trustee in this Estate by representing that it had such skills. For that reason we need not further consider that portion of the rule."

The judge than proceeded to evaluate Southeast's administration of the trust according to the "prudent man" standard and concluded settlor had not satisfied her burden of proving an abuse of trustee's discretionary authority. Accordingly, the court denied settlor's claims for surcharge.

Our study of the record compels disagreement with the court's statement that "there is no showing that this trustee . . . had extraordinary skill [i. e. greater skill than the ordinary prudent man] in the administration of trusts

. . . ." Hence, we rule the court erred in applying the "prudent man" standard in this case and will remand the record for reconsideration in light of the skills actually possessed by the trustee which skills were greater than those of a prudent man.

The basic measure of a trustee's duty was established in early decisions of this Court which held a trustee was required to exercise only "common skill, common prudence and common caution," and would not be held liable for losses to the trust corpus so long as it acted "as others do with their own goods and in good faith and are not guilty of gross negligence." *Neff's Appeal,* 57 Pa. 91, 96 (1868). See also *Eyster's Appeal,* 16 Pa. 372 (1851).

*Restatement of Trusts* § 174 (1935) stated a trustee's duty in terms of the "common prudence" standard but set forth an exception which required a trustee having superior skill to exercise such skill.[1] This Court adopted Section 174 of the Restatement in *Stirling's Estate,* 342 Pa. 497, 504, 21 A.2d 72, 76 (1941). See also *Killey Trust,* supra; *Lohm Estate,* 440 Pa. 268, 269 A.2d 451 (1970); *Mastria Estate,* 413 Pa. 278, 196 A.2d 653 (1964); *Glauser Estate,* 350 Pa. 192, 38 A.2d 64 (1944).

In the instant case, the Trust Administrator for Southeast's Trust Division testified regarding its investment review procedures during the term of the Mendenhall trust as follows: An investment officer was assigned to each trust account. The bank's investment officers formed an investment committee which reviewed the bank's holdings and made recommendations to the Trust Administration Committee which made final decisions regarding the acquisition and retention of investments. The bank's investment officers conducted periodic reviews of all trust accounts based on detailed analyses of the holdings in each account. In

1. Section 174 of the Restatement provided:
"The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill as he has."

addition, the bank employed outside firms as investment analysts, including Merrill-Lynch, Mitchell-Hutchins, Provident National Bank, Drexel-Burnham and Studley-Sherbert. Thus, the record does demonstrate Southeast possessed greater resources and skills than those of the ordinary individual trustee.[2] If, on remand, the court determines Southeast failed to use the resources and skills it possessed in administering the Mendenhall trust, a surcharge is justified for any depreciation in the value of principal resulting from the breach of duty.[3]

One further issue requires discussion. Settlor also asserts Southeast's liability for breach of trust under a second exception to the rule of "ordinary prudence" as added by the *Restatement (Second) of Trusts* § 174 (1957) which states:

> "the trustee who procures his appointment as trustee by *representing* that he has greater skill than that of a man of ordinary prudence . . . is under a duty to exercise such skill." [Emphasis added.][4]

In *Killey Trust*, supra, this Court adopted the foregoing "representation rule," stating that

2. In view of this affirmative showing, we need not decide if Southeast should be presumed to have greater competence in the management of trust estates because it is a "trust" company. But see and compare *Mereto Trust*, 2 Fiduc.Rep. 142 (Mont.Cty.1952) aff'd 373 Pa. 466, 96 A.2d 115 (1953); *Scott Trust*, 14 Fiduc.Rep. 405 (Mont. Cty.1964); *Fischer Estate*, 1 D. & C.3rd 205 (Mont.Cty.1976); *McCrorey Estate*, 73 D. & C.2d 409 (Mont.Cty.1975); *G. Bogert, Law of Trusts*, 338 (5th ed. 1972); 30 Col.L.R. 1162, 1172; 29 Mich.L.R. 125.

3. See *Restatement (Second) of Trusts* (1959), §§ 174, 176, 227, 228, 230, 231. See also *G. Bogert, Law of Trusts and Trustees* (2d ed. 1960), §§ 685, 706.

   A trustee cannot be surcharged for a breach of his duty unless the breach caused a loss. See, e. g., *Mastria Estate*, supra.

4. See also Uniform Probate Code § 7–302 for a similar provision. It states: "Except as otherwise provided by the terms of the trust, the trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another, and if the trustee has special skills or is named trustee on the basis of representations of special skills or expertise, he is under a duty to use those skills."

". . . one who procures his appointment as trustee by *representing* that he has greater skill than that of a man of ordinary prudence will be held to have such skill as he has represented." [Emphasis added.] 457 Pa. at 477, 326 A.2d at 375.[5]

In *Killey Trust,* supra, we exacted a higher standard of responsibility from the bank-trustee after concluding it had advertised itself as being an expert in the handling of estate and trust accounts.

In the instant case, no public representation of superior skills appears in the record. Settlor maintains that the bank officer, who assisted her in creating the trust, orally represented the bank was qualified to handle a trust of this type and that she relied on that representation. Even if we accepted an oral representation as the equivalent of public advertising for the purpose of determining the appropriate standard for a trustee's conduct, the record does not establish a representation of superior skills was made. The only pertinent testimony was given by settlor on direct examination:

"Q. And did Mr. Hume indicate to you that the bank was qualified to handle this type of a trust for you?

"A. Yes. We just thought that they were."

This, without more, is insufficient to prove Southeast procured its appointment as trustee by representing it had greater skill than the ordinary person.

**5.** The Restatement's "possession rule" and "representation rule" are not inconsistent with section 7302(b) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 7302(b), which sets a minimum standard of performance for fiduciaries. Nothing contained in section 7302(b) precludes the use of a higher standard to evaluate the performance of a trustee who either possesses or claims to possess greater skill. Section 7302(b) provides in pertinent part: "Any investment shall be an authorized investment if purchased or retained in the exercise of that degree of judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income to be derived therefrom as well as the probable safety of their capital. . . ."

84

Decree vacated and the record is remanded for further proceedings consistent with this opinion.   Costs on trustee.

POMEROY, former J., did not participate in the consideration or decision of this case.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I must dissent.  The majority's departure from the "ordinary prudent person" standard is completely unwarranted.

The auditing judge correctly decided that the evidence did not show that the trustee, Southeast National Bank, had extraordinary skill in administering estates or that it made such a representation to the settlor in being appointed as trustee.  Absent such a representation that the trustee has extraordinary skill, the appropriate standard to be applied is whether the trustee exercised the skill and judgment which a prudent person under similar circumstances would exercise in connection with the management of his or her own estate. *Mereto Estate*, 373 Pa. 466, 96 A.2d 115 (1953).  This standard is commonly known as the "ordinary prudent person" standard.

Although the majority agrees that the trustee did not represent to the settlor that it possessed extraordinary skills, the majority stretches this analysis to reach a desired result. The majority is remanding this appeal because the record shows that the trustee possesses "greater resources and skills than those of a ordinary individual trustee."   Page 954.   A finding of liability must be imposed if on remand, the trustee has failed to use "greater resources and skills." *Id.*

The majority's standard incorporates a new and different element in determining whether the trustee possesses "greater resources."   This Court has never applied such an onerous burden upon corporate or individual trustees. *See Killey Trust,* (Concurring opinion of Roberts, J.) 457 Pa. 474, 326 A.2d 372 (1974).

Therefore, as the trustee in this appeal made no representation that it possessed extraordinary skills, liability should not be imposed.